UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                              Chapter 11

Mymon Realty Inc.
                                                    Case No. 10-12488(MG)
                        Debtor.
------------------------------------------------------x

## DEBTOR'S MOTION TO ALLOW USE OF CASH COLLATERAL
## AND AUTHORITY TO BORROW FUNDS ON A SENIOR SECURED BASIS

**TO THE HONORABLE MARTIN GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

The motion of Mymon Realty Inc. (the "Debtor") for authority to allow use of cash collateral pursuant to 11 U.S.C. §363(c)(2)(B) and authority to borrow funds on a senior secured basis pursuant to 11 U.S.C. §364(d), represents and shows this Court as follows:

## BACKGROUND

1. The Debtor recently filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 7, 2010 and thereafter has continued in possession and management of its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2. The Debtor owns real property located at 334 Canal Street, New York, New York (the "Property") which is improved by a five-floor building with approximately 18,000 square feet. The first floor and basement are utilized for

commercial purposes and the second through fifth floors contain five luxury rental residential apartments.

3. The Property was acquired on May 26, 2007 for the sum of $11,000,000 with mortgage financing (the "Mortgage") provided by Column Financial Inc. ("Column Financial"). Column Financial is owed a current unpaid principal balance of approximately $9,242,000. Since the closing, Column Financial's interests as lenders have been assigned through various securitizations and are now held by CSMC-C3 Canal Street, LLC ("CSMC"). On information and belief, CSMC is a special purpose vehicle established by the special servicer involved, LNR Partners, Inc. ("LNR Partners").

4. On information and belief, CMCS belief that it is owed a current unpaid principal balance of approximately $9,242,000.

5. At the time of the acquisition and Mortgage financing, the Property needed certain sprinkler work to be completed at the Property in order to obtain a final certificate of occupancy. The Debtor and Column Financial closed on the Mortgage without a certificate of occupancy and instead established a capital reserve account (the "Capital Reserve") in the original amount of $165,600.

6. The purpose of the Capital Reserve was to set aside funds necessary to complete the sprinkler work and ultimately obtain a final certificate of occupancy. Moreover, the Capital Reserve was funded by the Debtor independent of the Mortgage proceeds. Upon information and belief, some of the Capital Reserve has been depleted and now contains a net balance of approximately $122,000.

7. As noted in its Local Rule Affidavit, the instant Chapter 11 filing was triggered by the fall-out caused by the Property lacking an automatic sprinkler system and a final certificate of occupancy that conforms to the Property's use. Though the Capital Reserve was established to enable the Debtor to procure a proper certificate of occupancy, the Debtor has been unable to do so because of a number of factors beyond its control. Nevertheless, the implications of not having a proper certificate of occupancy raise issues concerning the overall validity of the Mortgage itself.

8. Without a residential certificate of occupancy, the Property could not be lawfully leased and occupied for residential purposes due to its classification under New York law as a multiple dwelling. Thus, from the outset, the Debtor's ability and authority to collect rents was seriously compromised. In reality, Column Financial should not have made and issued the Mortgage, irrespective of the Capital Reserve.

9. The Debtor contends that Column Financial and its successors knew the Property could not to be occupied for residential purposes but nevertheless proceeded with executing and/or servicing the Mortgage in any event. The improvident making of the Mortgage gives rise to lender liability claims against Column Financial and its successors under New York law, as well as claims against the attorney who represented the Debtor in connection with the Debtor's execution of the Mortgage and related loan documents.

10. All of these claims will be addressed in an upcoming adversary proceedings or state court litigation for which the Debtor currently prepares, but, in the

near term, it is absolutely critical that the sprinkler system be installed so that the Debtor can obtain a residential certificate of occupancy and resume collecting rents.

11. In the fall of 2009, the Debtor learned of the legal consequences of operating the Property without a final certificate of occupancy. Accordingly, the Debtor requested that all then-existing residential tenants leave the Property so that their safety could be assured and so that the Debtor could take the necessary steps to procure an automatic sprinkler system and final certificate of occupancy.

12. As of this date, two out of five residential units remain occupied, but the remaining tenants have refused to pay rent. The affiliated commercial tenant remains in possession as well and has not paid rent during this period. Instead, on information and belief, the commercial tenant has escrowed certain funds at a rate of approximately $20,000 per month. While this is about half of the rent reserved under the commercial lease, the lack of a certificate of occupancy and an automatic sprinkler system as required by New York State Multiple Dwelling Law and the New York City Administrative Code may also be considered a breach of the commercial lease by the Debtor, as landlord.

## RELIEF REQUESTED

13. As an important threshold matter, the Debtor hereby seeks authorization to use the balance of the Capital Reserve for its dedicated purpose of completing the sprinkler work and to borrow additional funds of up to $50,000 to make-up any shortfall pursuant to the attached Term Sheet annexed hereto as Exhibit "1". The proposed lender, Oshri Adri, is the daughter of the Debtor's principal, Oded Adri. The Debtor has made efforts to obtain a conventional loan, but, predictably, under the current

circumstances it is virtually impossible for the Debtor to receive financing. The Debtor has no choice but to seek assistance from insiders.

14. There is no effort to profit on the loan which will be made without interest. As security for the debtor-in-possession loan (the "DIP Loan"), Oshri Adri requests a senior lien under 11 U.S.C. §364(d) which the Debtor submits is justified, and that CSMC will be adequately protected. First, installation of the automatic sprinkler system and procurement of a proper, final certificate of occupancy will add tremendous value to the Property, thereby enhancing the value of CSMC's potential claim. Second, the DIP Loan will prime only a fraction of a percent of the Mortgage. Similarly, the Debtor submits that CSMC would be adequately protected by the Debtor's use of the Capital Reserve because the Property's value will undoubtedly increase by an amount equal to or in excess of the funds in the Capital Reserve once the occupancy of the Property is compliant with all state and local laws.

15. Alternatively, the Debtor would certainly permit CSMC to make a protective advance and fund the shortfall itself so as to avoid a fight over priming. If CMCS is interested in this alternative, the Debtor is willing to negotiate fair and reasonable terms of such an advance, including interest, so long as the advance does not prejudice any of the Debtor's claims against CSMC or any of the other lenders.

16. The Debtor would only use proceeds of the Capital Reserve or the DIP Loan to complete the projects necessary for it to install the automatic sprinkler system and procure a final certificate of occupancy. The Debtor has obtained contracts and/or estimates from various contractors as to the total costs of these projects. Copies of

these contracts and/or estimates are collectively annexed hereto as Exhibit "2" and total approximately $141,100 (with approximately $43,700 in retainers and deposits due upon signing contracts), itemized as follows:

- Klein, Levin Associates: $6,600 total (inclusive of a $3,000 deposit) to: create a plan for the installation of an automatic sprinkler system; file said plan with, as may be necessary, (1) the Department of Environmental Protection, (2) the Cross-Connection Control Unit, and (3) the NYC Department of Buildings; and provide expediting services for approval of such plans;

- N.Y.C. Water Works Inc.: $13,500 total (inclusive of a $7,000 deposit) to obtain permits for and complete excavation, piping, backfill and roadway/sidewalk restoration in connection with the installation of piping necessary for the installation of an automatic sprinkler system;

- Safety Fire Sprinkler Corp.: $67,000 total (inclusive of a $6,700 deposit) to install the automatic sprinkler system in each of the Building's floors; and

- Aston Architecture, PC: $54,000 total (inclusive of a $27,000 retainer) to handle all of the filings (including reinstating various applications, withdrawing certain expired applications, and removing various violations) necessary for the Property to obtain a final certificate of occupancy.

17. Under the circumstances, the Debtor is hopeful that Column Financial will not object to this proposed use of cash collateral and additional borrowing, since obtaining a proper final certificate of occupancy is in everyone's interest. To the extent objections may be filed, the Debtor reserves the right to supplement this motion to make the necessary adequate protection showings implicated by the relief sought.

WHEREFORE, the Debtor prays for relief consistent with the foregoing, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      May 14, 2010

>GOLDBERG WEPRIN FINKEL
>GOLDSTEIN LLP
>Attorney for the Debtor
>1501 Broadway, 22nd Floor
>New York, New York 10036
>(212) 221-5700
>
>By: _____
>    Kevin J. Nash (KJN 6274)
>    A Member of the Firm

H:\sylvia\word\Mymon Realty Inc. - (bankruptcy) MYMON.290-10\Motion to compel use of cash collateral and borrow funds 5-14-10.doc

7