Andrew C. Gold  
Frederick E. Schmidt, Jr.  
HERRICK, FEINSTEIN LLP  
2 Park Avenue  
New York, New York 10016  
Telephone: (212) 592-1400  
Facsimile: (212) 592-1500  
agold@herrick.com  
eschmidt@herrick.com  

*Attorneys for CSMC 2007-C3 Canal Street, LLC*

Hearing Date: June 24, 2010  
at 2:00 p.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – x  
In re:  
    Mymon Realty Inc.  
              Debtor.  
– – – – – – – – – – – – – – – – – – – – – – – – – – – x

Chapter 11 Case No. 10-12488 (MG)

## MOTION OF SECURED CREDITOR, CSMC 2007-C3 CANAL STREET, LLC, FOR DISMISSAL, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

CSMC 2007-C3 Canal Street, LLC ("CSMC" or the "Movant"), by its attorneys, Herrick, Feinstein LLP, as and for its motion (the "Motion") seeking entry of an order, pursuant to 11 U.S.C. § 1112(b), dismissing the above-captioned chapter 11 case of Mymon Realty Inc. (the "Debtor"), or, in the alternative, vacating the automatic stay, pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2), respectfully represents as follows:

### INTRODUCTION

1. This case does not belong in bankruptcy. It is a simple two-party dispute between a single asset real estate debtor and its secured lender which, prior to the filing of this chapter 11 case, was being adjudicated in a foreclosure proceeding pending in the New York State Supreme

Court. The Property has been in receivership since April 5, 2010. According to the Debtor's schedules of assets and liabilities, other than the Movant, with a scheduled secured claim of $9,242,206.08,[1] the only other creditors in this case consist of various unliquidated, contingent and/or disputed claims of taxing and governmental authorities and the claim of the Debtor's principal, Mr. Oded Adri, for "Deferred Compensation" in the amount of $54,500.00. There are no trade claims. There are no utility claims. There are no executory contracts to administer under chapter 11. There are no employees other than the Debtor's principal. In short, there is no business to reorganize.

2. The Debtor's sole significant asset, a five-floor building located at 334 Canal Street, New York, NY (the "Property") lies mostly vacant with only two residential tenants and one commercial tenant, Canal Street Music Audio Inc. d/b/a Uncle Steve's Car Stereo (which is owned by Mr. Adri's son), occupying the building. *None* of the tenants, including Mr. Adri's son, are currently paying any rent. This fact is especially remarkable since, according to the Debtor's Schedules, Mr. Adri is a guarantor on his son's commercial lease.

3. The Property does not and cannot generate nearly enough income to service the secured debt. Indeed, at the present time, the Property generates no income and is deteriorating in value. The Debtor lists the value of the Property as $11 million which was the purchase price paid for the Property in 2007. The actual value of the Property, however, is millions of dollars less. According to an appraisal commissioned by the Movant, a copy of which is annexed hereto as Exhibit "A" (the "Appraisal"), the value of the Property, as of February 8, 2010, is $7.1 million. Thus, there is absolutely no equity in the Property and the cash flows generated therefrom (currently $0) are woefully inadequate to service the secured debt. Moreover, the

---

[1] As of the Petition Date, the principal balance due on the Loan was actually $9,242,606.06 and accrued interest was $393,658.00. The Movant reserves all rights to file a proof of claim in this case asserting a secured claim in an amount other than what was scheduled by the Debtor.

Movant's approximately $2 million deficiency claim gives well over two-thirds in amount of all general unsecured claims. The Movant, therefore, controls both the secured and unsecured claims pool. Against this backdrop, there is no possibility that the Debtor can propose a confirmable plan of reorganization around the Property. Accordingly, the Property is not necessary to an effective reorganization. Thus, in the event the Court declines to dismiss the Case, modification of the automatic stay is warranted to enable the Movant to proceed with its pending foreclosure action against the Debtor.

## BACKGROUND

4. On May 7, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code in this Court and an order for relief under section 301 of the Bankruptcy Code was simultaneously entered in its case (the "Chapter 11 Case").

5. Prior to the Petition Date, by order entered on or about April 5, 2010 (the "Receivership Order"), Carol Lilienfeld, Esq. (the "Receiver") was appointed receiver of the Property. The Receiver was charged with, among other things, collecting rents generated by the Property. In the event that the relief sought herein is denied, Movant intends to move for the continuation of the receivership pursuant to 11 U.S.C. § 543(d)(1).

6. No committee of unsecured creditors has been appointed by the United States Trustee for the Southern District of New York (the "UST") in the Chapter 11 Case.

7. The Debtor concedes that it is a single asset real estate debtor, as defined in 11 U.S.C. § 101(51B).

## RELEVANT FACTS

The Loan

5838533-3                                            3
HF 5838533 v.4  #02850/0091 05/26/2010 12:18 PM

8. The Debtor is a borrower under a mortgage encumbering the Property which is comprised of certain real property located in the Borough of Manhattan, in the City of New York, County of New York and State of New York, known as and by the street address 334 Canal Street, New York, New York, also known as Section 1, Block 210, Lot 7 on the Tax Map for the County of New York, together with the buildings, improvements, fixtures, machinery, equipment, personalty and other rights or interests of any kind or nature located thereon.

9. On or about May 16, 2007, Column Financial, Inc. ("Column Financial") loaned the Debtor the principal sum of $9,500,000.00 (the "Loan"). For the purpose of evidencing its indebtedness to Column Financial, the Debtor executed and delivered to Column Financial an Amended, Restated and Consolidated Promissory Note, dated May 16, 2007 (the "Note"), in which the Debtor promised to pay to Column Financial the principal sum of $9,500,000.00, together with interest thereon and all other sums due and owing with respect to the Loan. A true and complete copy of the Note is annexed hereto as Exhibit "B."

10. To secure repayment of the Note, the Debtor executed and delivered to Column Financial an Amended, Restated and Consolidated Mortgage and Security Agreement, dated as of May 16, 2007 (the "Mortgage"), in which the Debtor mortgaged the Mortgaged Property to Column Financial. The Mortgage was duly recorded on May 29, 2007 in the Office of the City Register of the County of New York as CRFN 2007000277334, and the recording tax thereon was duly paid. A true and complete copy of the Mortgage is annexed hereto as Exhibit "C."

11. To further secure repayment of the Note, the Debtor executed and delivered to Column Financial an Assignment of Leases and Rents, dated May 16, 2007 (the "Assignment of Rents"), whereby the Debtor irrevocably, absolutely and unconditionally assigned and granted to Column Financial all existing and future leases and lease provisions as provided therein. The

Assignment of Rents was duly recorded on May 29, 2007 in the Office of the City Register of the County of New York as CRFN 2007000277335. A true and complete copy of the Assignment of Rents is annexed hereto as Exhibit "D."

12. To further secure repayment of the Note, Mr. Adri executed and delivered to Column Financial an Indemnity and Guaranty Agreement, dated May 16, 2007 (the "Guaranty"). A true and complete copy of the Guaranty is annexed hereto as Exhibit "E."

13. By written assignments effective as of June 23, 2008, Column Financial assigned all of its right, title and interest in and to the Note, Mortgage, Assignment of Rents, Guaranty and all other related loan documents to Wells Fargo Bank, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C3 ("Wells Fargo"). Copies of the aforesaid assignments are collectively attached hereto as Exhibit "F."

14. By written assignments effective as of June 30, 2009, Wells Fargo assigned all of its right, title and interest in and to the Note, Mortgage, Assignment of Rents, Guaranty and all other related loan documents to Bank of America, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C3 ("Bank of America"). Copies of the aforesaid assignments are collectively attached hereto as Exhibit "G."

15. By written assignments dated as of January 29, 2010, Bank of America assigned all of its right, title and interest in and to the Note, Mortgage, Assignment of Rents, Guaranty and all other related loan documents to CSMC. Copies of the aforesaid assignments are collectively attached hereto as Exhibit "H."

The Debtor's Default Under the Loan

16.     The Debtor defaulted under the Note and Mortgage in September, 2009 by, among other things, failing to pay the principal, interest and other payments due thereunder.

17.     As a result of Borrower's default, CSMC accelerated all outstanding sums due under the Note and Mortgage and demanded immediate payment thereof.   No payments have been received in the interim period.

18.     On or about February 23, 2010, the Movant commenced a foreclosure proceeding (the "Foreclosure Action") against the Debtor in the Supreme Court of the State of New York, County of New York (the "State Court").  The Foreclosure Action was automatically stayed on the Petition Date.

## ARGUMENT

### I.   THE DEBTOR'S BANKRUPTCY CASE SHOULD BE DISMISSED AS A BAD FAITH FILING.

19.     Section 1112 of the Bankruptcy Code provides that a chapter 11 case may be dismissed "for cause."  Subsection (b)(1) thereof provides as follows:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

20.     It is well-settled that "cause" for dismissal purposes includes a filing made in bad faith.  In re C-TC 9th Avenue Partnership v. Norton Movant (In re C-TC 9th Ave P'ship), 113 F.3d 1304, 1310 (2d Cir. 1997); see also Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 227-28 (2d Cir. 1991); In re SGL Carbon Corp., 200 F.3d

154, 160-61 (3d Cir. 1999) (compiling cases); In re Schur Management, 323 B.R. 123, 126 (Bankr. S.D.N.Y. 2005).

21. The Second Circuit Court of Appeals, has found the following eight factors to be indicative of a bad faith filing giving rise to "cause" for dismissal:

    a.    The debtor has only one asset;

    b.    The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

    c.    The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

    d.    The debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in a pending state court action;

    e.    The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

    f.    The debtor has little or no cash flow;

    g.    The debtor can't meet current expenses including the payment of personal property and real estate taxes; and

    h.    The debtor has no employees.

See In re C-TC 9th Ave. Partnership, 113 F.3d at 1311; see also, In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394-95 (11h Cir. 1988); In re Kaplan Breslaw Ash, LLC, 264 B.R. 309 (Bankr. S.D.N.Y. 2001); 234-6 West 22nd St. Corp., 214 B.R. 751, 760 (Bankr. S.D.N.Y. 1997).

22. Here, *every single* C-TC bad faith factor is present. Specifically, (1) the case is admittedly a single asset real estate case; (2) aside from the claim asserted by the Debtor's principal and various contingent, unliquidated and disputed taxing authority claims, the only creditor in this case is the Movant whose secured and deficiency claims dwarf all other scheduled claims; (3) the Debtor's only asset, the Property, is the subject of the Foreclosure Action as a result of the Debtor's default on the debt; (4) the case is, in essence, a two-party

dispute between the Debtor and the Movant which can and should be resolved in the Foreclosure Action; (5) the filing was commenced in the midst of the Foreclosure Action evidencing the Debtor's intent to delay and frustrate the Movant's legitimate efforts to enforce its rights under the Note and Mortgage; (6) the Debtor has absolutely no cash flow[2]; (7) the Debtor cannot meet its current expenses including the payment of taxes on the Property; and (8) the Debtor has no employees other than its principal, Mr. Adri. Because every single C-TC factor is present, the Movant respectfully submits that the Chapter 11 Case must be dismissed pursuant to 11 U.S.C. § 1112 as a bad faith filing.

## II. THE MOVANT IS ALSO ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) and (d)(2)

23. If the Court declines to dismiss the Chapter 11 Case, the Movant is entitled, in the alternative, to relief from the automatic stay to allow it to proceed with the Foreclosure Action.

24. Section 362(d) of the Bankruptcy Code governs the automatic stay and the modification thereof. The section provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay --
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if -
>
> (A) the debtor does not have any equity in such property; and

---

[2] The Debtor admits that none of its tenants are paying rent. Moreover, the Property was placed in receivership by an order of the Supreme Court of the State of New York dated 4/5/10. The Receiver has advised that she has not received any rent. In the event that the relief requested herein is denied, the Movant intends to file a motion seeking the continuation of the receivership during the pendency of this chapter 11 case.

(B) such property is not necessary to an effective reorganization …

11 U.S.C. § 362(d)(1), (2).

25. "Sections 362(d)(1) and (d)(2) are disjunctive. This means that the Court must lift the stay if the movant prevails under either of the two grounds." In re Elmira Litho Inc., 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (citing In re Touloumis, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994); In re de Kleinman, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993); In re Diplomat Elecs. Corp., 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988)). Here, the Movant respectfully submits that it is entitled to modification of the automatic stay for cause under both sections 362(d)(1) and (2).

### "Cause" Exists for Relief From Stay Pursuant to 11 U.S.C. § 362(d)(1)

26. In a hearing for relief from the automatic stay under Section 362(d), the party opposing stay relief bears the burden of proof on all issues (except the debtor's equity in the property under section 362(d)(2)(A)). See In re Domestic Fuel Corp., 70 B.R. 455, 462-63 (Bankr. S.D.N.Y. 1987); 11 U.S.C. § 362(g). If a creditor seeking relief from the automatic stay makes a *prima facie* case of "cause" for lifting the stay, the burden of going forward shifts to the debtor pursuant to Section 362(g). In re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997). See also Elmira Litho, 174 B.R. at 901.

27. The term "cause" is not defined in the Bankruptcy Code, and whether cause to lift the stay exists should be determined on a case-by-case basis. See Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990); In re Balco Ltd., 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004). The decision whether to lift the automatic stay is committed to the sound discretion of the bankruptcy judge and may be overturned only upon a showing of abuse of discretion. See Sonnax, 907 F2d at 1286.

28. Here, the Debtor's bad faith in filing its chapter 11 petition constitutes "cause" to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1). See In re Kornhauser, 184 B.R. 425, 428 (Bankr. S.D.N.Y. 1995); Manhattan King David Restaurant, Inc. v. Levine, 163 B.R. 36, 40 (S.D.N.Y. 1993). As more fully set forth above, it is clear that the Debtor's petition was filed in bad faith without a valid reorganization purpose and, accordingly, cause exists to vacate the automatic stay as it pertains to the Movant.

29. In In re Kaplan Breslaw Ash, LLC, Judge Gerber considered a similar set of circumstances and found the debtor's bad faith filing to constitute "cause" for stay relief. In so doing, the court noted:

> Here, under the totality of the circumstances, the Court finds this case to be indistinguishable in relevant respects from *234-6 West 22nd St.*, and applying criteria in that case and *C-TC TC 9th Ave. Partnership*, the Court concludes that this case should be dismissed for substantially the same reasons. Here the Debtor has only one assets, the Warehouse. It has no employees. It produces no income, and has no discernible cash flow. It has very few unsecured creditors (especially non-insiders), and none, so far as the Court can determine, that would be helped by a chapter 11 reorganization. (Indeed, the two largest unsecured claims-though recognizing the likelihood that they will overlap - are those of the Mortgageholder and Sterling, affiliates of each other who support relief from the stay.) The Warehouse is the subject of a foreclosure action as the result of arrearages on the Mortgageholder's secured debts. The case is essentially a two-party dispute between the Mortgageholder and the Debtor, and the timing of the Debtor's entry into bankruptcy (initially in New Jersey) has caused the Court to find as a fact that the Debtor timed its bankruptcy filing so that it could avail itself of the automatic stay in order to stop the foreclosure action.

In re Kaplan Breslaw Ash, LLC, 264 B.R. at 335.

30. In addition, the Movant's lack of adequate protection also constitutes "cause" warranting relief from the automatic stay. Lack of adequate protection is specifically defined as cause under section 362(d)(1). Although adequate protection is specifically defined in the

Bankruptcy Code, section 361 lists three separate ways adequate protection may be provided to a creditor:

    (i)    cash payments or periodic cash payments;

    (ii)    replacement lien; or

    (iii)    granting such other relief, as will result in the realization of the indubitable equivalent of the creditor's interest in such property.

11 U.S.C. § 361.

31. One bankruptcy court recently explained:

> The purpose of providing adequate protection is to insure that a creditor receives the value for which it bargained pre-bankruptcy. In re O'Connor, 808 F.2d 1393, 1396 (10th Cir. 1987). Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value … and is made on a case-by-case basis. Id. at 1397. The secured creditor "must, therefore, prove this decline in value-or the threat of a decline-in order to establish a prima facia case." In re Elmira Litho,. Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

Gunnison, 320 B.R. 391, 396 (Bankr. D. Col. 2005).

32. The Supreme Court has stated that an "interest is not adequately protected if the security is depreciating during the term of the stay." United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 370 (1988).

33. In this case, no adequate protection has been offered by the Debtor. In the meantime, the Property is declining in value. The Appraisal demonstrates that the Property's value has declined precipitously from its $11 million purchase price in 2007 to approximately $7.1 million presently. In addition, the Debtor's Schedules do not evidence that it has any unencumbered funds with which to perform maintenance on the Property. Moreover, none of the

tenants, including the son of the Debtor's principal (backed by the principal himself) are currently paying any rent. The Debtor has not explained where it can obtain funds to meet its obligations to pay post-petition taxes, pay post-petition violations and fines, or to insure the Property.[3] Thus, the Debtor cannot credibly argue that the Property is not declining in value.

34. Courts regularly grant relief from the automatic stay where the movant has demonstrated a post-petition diminution in the value of the collateral. See e.g., LNC Invs., Inc. v. First Fidelity Bank, 1995 WL 231322 at * 4 (S.D.N.Y. Apr. 19, 1995) (noting that methods of determining lack of adequate protection under section 362(d)(1) "emphasize actual or likely diminution in the value of the collateral in the period between the petition and the plan"); In re 160 Bleecker St. Assocs., 156 B.R. 405, 413 (S.D.N.Y. 1993) (reversing ruling of bankruptcy court and vacating stay because value of collateral had declined by $600,000 (from an appraised value of $1.6 million) over course of one and a half years); In re Domestic Fuel Corp., 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) (granting relief from the automatic stay under section 362(d)(1) where movant demonstrated decline in value of stock pledged by debtor and debtor failed to establish movant was adequately protected); In re Armenakis, 406 B.R. 589, 620-21 (Bankr. S.D.N.Y. 2009) (granting creditor's motion for relief from stay upon the finding that secured creditor had proven decline or threat of decline in value of collateral and debtor had not offered any proof that creditor was adequately protected); In re Grant Assocs., 1991 WL 21228 at *7 (S.D.N.Y. Feb. 5, 1991) (affirming bankruptcy court order terminating stay under section 362(d)(1) on the grounds that building securing creditor's claim was declining in value and debtor was unable to provide adequate protection).

---

[3] Although the Debtor recently filed a motion seeking approval of a $50,000 debtor-in-possession financing and awarding Mr. Adri's daughter a priming lien in connection with such financing, the proceeds thereof are purportedly earmarked for the installation of a sprinkler system.

35. "Once the movant satisfies this initial burden, the burden shifts to the debtor to go forward with evidence, and ultimately, to prove that the collateral is not declining in value, or that the secured party is adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization." Elmira Litho, 174 B.R. at 902 (citations omitted).

36. The Debtor cannot satisfy its burden to show that the Property is not declining in value. Nor can it credibly argue that the Movant is adequately protected. Accordingly, the Movant should be granted relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code for "cause."

**Relief From Stay is Appropriate Under 11 U.S.C. § 362(d)(2) Because There is No Equity In the Property and the Property Is Not Necessary for an Effective Reorganization**

37. The Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) because there is no equity in the Property and the Property is not necessary for an effective reorganization.

38. As reflected in the Appraisal, the value of the Property is currently $7.1 million. According to the Debtor's Schedules, the secured claim of the Movant is approximately $9.2 million. Accordingly, no equity exists in the Property.

39. Lack of equity is not necessarily fatal under § 362(d)(2) if a debtor can prove that the property is necessary to an effective reorganization. In re Steffens, 275 B.R. 570, 578 (Bankr. D. Colo. 2002). But to succeed in that regard, a debtor must show that there is a reasonable prospect of a successful organization within a reasonable period of time. United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 375-76 (1988). If the debtor is unable to make such a showing, the court must grant relief from the stay. See 11 U.S.C. §

362(d). Here, it is clear that the Debtor is unable to establish that the Property is necessary for an effective reorganization because it cannot propose a confirmable plan within a reasonable period of time.

40. Based upon the Appraisal and the Movant's scheduled secured claim, the Movant is undersecured by approximately $2 million. With a $2 million deficiency claim, the Movant is by far the largest non-insider general unsecured creditor with more than two-thirds in amount of the unsecured creditor pool. Therefore, the deficiency portion of the Movant' claim is more than sufficient to control the non-insider general unsecured class in the Chapter 11 Case. Accordingly, the Debtor will not be able to obtain the consent of a non-insider class of impaired claims, as required by section 1129(a)(10) of the Bankruptcy Code and, therefore, cannot confirm a plan.

41. It is anticipated that the Debtor may argue that it can re-finance the Property in order to confirm a plan. Absent a thunderous recovery in the real estate market, however, refinancing the Property is nothing more than a pipe dream. In determining whether the Property is necessary for the Debtor's effective reorganization, the court must look to whether the Debtor has a reasonable probability of successfully reorganizing within a reasonable time. Timbers, supra. In Timbers, the Supreme Court stated:

> To establish that the collateral at issue is 'necessary to an effective reorganization'… requires not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means … that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'

Timbers, 484 U.S. at 375-77.

5838533-3        14
HF 5838533 v.4  #02850/0091 05/26/2010 12:18 PM

42. Reasonable probability cannot be found solely on speculation that some day, somewhere, someone will fund a plan and/or refinance the liens existing on the subject property. Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.), 101 F.3d 882, 887 (2d Cir. 1996) ("It goes without saying that an effective reorganization cannot be based solely on speculation . . . .") (citing In re Kent Terminal Corp., 166 B.R. 555, 562 (Bankr. S.D.N.Y. 1994) and In re Saypol, 31 B.R. 796, 803 (Bankr. S.D.N.Y. 1983)); In re New Era Co., 125 B.R. 725, 730 (S.D.N.Y. 1991) ("mere dreams" of reorganization cannot sustain the automatic stay); Diplomat Elecs., 82 B.R. at 693. See also In re Playa Dev. Corp., 68 B.R. 549, 555 (Bankr. W.D. Tex. 1986) (citing In re Matter of Terra Mar Assocs., 3 B.R. 462, 466 (Bankr. D. Conn. 1980)); In re St. Peter's School, 16 B.R. 404, 408 (Bankr. S.D.N.Y. 1982).

43. The "effective reorganization" language of section 362 requires more than the mere theoretical prospect of a successful reorganization; rather, it must be established that a reorganization is indeed possible. See In re Planned Systems, Inc., 78 B.R. 852, 866 (Bankr. S.D. Ohio 1987). "Without a credible reorganization plan in prospect, [a debtor] is not entitled to the continuation of the automatic stay under Section 362(d)(2)(B)." Pegasus, 101 F.3d at 886 (citing Timbers) (concluding that "the assumptions and projections proffered in support of [the debtor's] reorganization plan do not pass the straight-face test, and [the debtor] ha[d], therefore, utterly failed to meet its burden of showing that the … Property is 'necessary to an effective reorganization, [as required by] 11 U.S.C. § 362(d)(2)(B)'").

44. Here, given the fact that the Property is approximately $2 million under water, the Debtor cannot credibly argue that it can refinance the Property. Moreover, the Property does not currently generate any cash flow. Accordingly, it is inconceivable that the Property could form the basis of an effective reorganization.

## CONCLUSION

The Movant respectfully requests that the Court enter an order, substantially in the form annexed hereto as <u>Exhibit "I"</u>, dismissing the Chapter 11 Case or, in the alternative, modifying the automatic stay to enable the Movant to proceed with the Foreclosure Action up to and including a foreclosure sale of the Property, and granting such other relief as may be just and proper.

Dated: New York, New York
       May 26, 2010

Respectfully submitted,

HERRICK, FEINSTEIN LLP
*Attorneys for CSMC 2007-C3*
 *Canal Street, LLC*


By:   /s/ Andrew C. Gold\_\_\_\_
       Andrew C. Gold
       Frederick E. Schmidt, Jr.
2 Park Avenue
New York, New York 10016
(212) 592-1400
agold@herrick.com
eschmidt@herrick.com